UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHARON MARIE DIETZ,

  Plaintiff,

v.              Case No: 6:16-cv-1421-Orl-37CM

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.

# REPORT AND RECOMMENDATION[1]

Plaintiff Sharon Marie Dietz seeks judicial review of the denial of her claim for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the Court recommends that the decision of the Commissioner be affirmed.

## I. Issues on Appeal[2]

Plaintiff raises two issues on appeal: (a) whether the Administrative Law Judge ("ALJ") properly weighed the opinions of Plaintiff's treating physician, Robert

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

J. Martin, M.D., and (b) whether the ALJ properly discredited Plaintiff's subjective complaints.

## II. Procedural History and Summary of the ALJ Decision

On February 8, 2013, Plaintiff filed applications for disability and DIB alleging that she became disabled and unable to work on October 5, 2011. Tr. 14, 71. Plaintiff alleged disability due to permanent nerve damage from her back injury. Tr. 71. Plaintiff's applications were denied initially and upon reconsideration. Tr. 91-96, 99-103. Plaintiff requested and received a hearing before ALJ Ken B. Terry on January 20, 2015. Tr. 32, 121-25. Plaintiff, who was represented by counsel, appeared and testified via video teleconference[3] at the hearing. Tr. 32. A vocational expert ("VE") also appeared and testified in person at the hearing. *Id.*

On February 12, 2015, the ALJ issued a decision finding Plaintiff not disabled from October 5, 2011 through to the date of the decision. Tr. 14-25. At step one, the ALJ concluded Plaintiff did not engage in substantial gainful activity since October 5, 2011, the alleged onset date. Tr. 16. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; status-post lumbar discectomy; a history of temporomandibular joint ("TMJ") disorder; and a history of colitis. *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

---

[3] The ALJ presided over the hearing in Jacksonville, Florida, and Plaintiff appeared from Port Orange, Florida. Tr. 14.

2

Subpart P, Appendix 1." *Id.*

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work,

> except [Plaintiff] can lift/carry and push/pull 10 pounds frequently (2/3 of the workday) and 20 pounds occasionally (1/3 of the workday); [Plaintiff] can sit 4 hours at a time, for a total of 8 hours per day; [Plaintiff] can stand and/or walk 2 hours at a time, for a total of 6 hours per day, all within customary breaks every 2 hours for 15 minutes at a time, and including a lunch break; [Plaintiff] must never climb ladders, ropes, or scaffolds; [Plaintiff] can occasionally climb ramps/stairs, balance, stoop, and kneel; [Plaintiff] must never crouch or crawl; [Plaintiff] must avoid concentrated exposure to extreme cold, vibrations, and hazards including unprotected heights and dangerous machinery.

Tr. 17. Next, the ALJ found that Plaintiff is capable of performing her past relevant work as a sales representative. Tr. 23. Thus, the ALJ concluded Plaintiff has not been under a disability from October 5, 2011 through the date of the decision. Tr. 25.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on June 10, 2016. Tr. 1. Accordingly, the February 12, 2015 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on August 9, 2016. Doc. 1. This matter is now ripe for review.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential

analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

4

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. Whether the ALJ properly weighed the opinions of Plaintiff's treating physician, Robert J. Martin, M.D.

Robert J. Martin, M.D., a neurological surgeon, treated Plaintiff for her back pain from November 15, 2011 to May 28, 2014. Tr. 255-81, 290-95, 323-33. On November 15, 2011, Dr. Martin began treating Plaintiff because she developed significant pain in her left gluteal area, which radiated into the sole of her foot, after she performed much lifting and twisting during her job at a convention. Tr. 280.

Relevant here are Dr. Martin's two opinions from January 11, 2013 and May 29, 2013. Tr. 284-86, 293. On January 11, 2013, Dr. Martin provided a letter, stating that Plaintiff has a left L5-S1 disc herniation[4] and had surgery in November 2011 due to her back disc herniation. Tr. 281, 293. He opined that Plaintiff continued to have radicular pain and symptoms and "has been unable to work because of significant restrictions in her activity." Tr. 293. Dr. Martin determined that Plaintiff is "unable to work at this time because of a medical disability." *Id.* The ALJ did not discuss this letter in his opinion. Tr. 14-25.

On May 29, 2013, Dr. Martin submitted a medical source statement regarding Plaintiff's physical ability to perform work-related activities. Tr. 284-86. He opined that Plaintiff's ability to carry or lift is affected by her impairment. Tr. 284. He noted that Plaintiff could lift and/or carry occasionally or frequently less than 10 pounds.

---

[4] A herniated disc means a problem with one of the discs between the individual bones that stack up and constitute a spine. Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/herniated-disk/home/ovc-20271246 (last visited July 24, 2017).

*Id.* Dr. Martin also found that Plaintiff's impairment affects her ability to stand and/or walk, and she could stand and/or work fewer than 2 hours in an 8-hour workday. *Id.* He further determined that Plaintiff's impairment affects her abilities to sit, push and/or pull. Tr. 285. He indicated that Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort and is limited in her lower extremities to push and/or pull. *Id.* He opined that Plaintiff's limitations are caused by her left lower-back dysesthetic pain.[5] *Id.*

Furthermore, Dr. Martin noted that on average, Plaintiff is anticipated to be absent from work about twice per month because of her impairments or treatment. *Id.* He indicated that Plaintiff could occasionally climb ramps, stairs, ladders, ropes or scaffolds and could occasionally balance, but never kneel, crouch or crawl. *Id.* He opined that Plaintiff is limited in reaching all directions, including doing overhead work, because of her increased low back pain. Tr. 286. Dr. Martin found, however, that Plaintiff is unlimited in handling, fingering, feeling, seeing, hearing and speaking. *Id.* He also determined that Plaintiff does not have any limitations regarding extreme temperatures, noise, dust, humidity/wetness, fumes, odors, chemicals or gases, although she has limitations related to vibrations and hazards. *Id.* He explained that Plaintiff has numbness in her lower back and should avoid heights and risks of falls. *Id.*

---

[5] Dysesthesia refers to pain or uncomfortable sensations, often described as burning, tingling or numbness. Encyclopedia.com, http://www.encyclopedia.com/science/encyclopedias-almanacs-transcripts-and-maps/dysesthesias (last visited July 24, 2017).

7

In assessing Plaintiff's RFC, the ALJ discussed Dr. Martin's treatment notes in detail, including ones from the initial visit on November 15, 2011 and surgery performed on November 22, 2011. Tr. 18-20, 255-56, 280-81. After analyzing them with other medical evidence, the ALJ discussed and accorded little weight to Dr. Martin's May 29, 2013 medical opinion because:

> Dr. Martin's medical source statement is inherently inconsistent with his own treatment notes which document that [Plaintiff] has full strength, and that she is doing well. Furthermore, Dr. Martin notes that [Plaintiff] had negative straight leg raise, which is suggestive of no radicular symptoms (Exhibit 3F). The undersigned has included limitations in consideration of her prior surgery and symptoms, including the finding that [Plaintiff] must never climb ladders, ropes, or scaffolds; [Plaintiff] can occasionally climb ramps/stairs, balance, stoop, kneel; [Plaintiff] must never crouch or crawl; [Plaintiff] must avoid concentrated exposure to extreme cold, vibrations, and hazards including unprotected heights and dangerous machinery. However, the inability to perform even sedentary work for an 8 hour day is not supported by the objective medical evidence and other evidence of record including limited treatment postsurgically. Additionally, [Plaintiff] engages in significant activities, including home schooling her two young daughters, driving daily, and performing chores, suggestive that she is more capable of work related activities than identified in Dr. Martin's opinion. Therefore, the undersigned gives Dr. Martin little weight here.

Tr. 21.

Plaintiff refers to Dr. Martin's opinions from January 11, 2013 and May 29, 2013. Doc. 13 at 14-15. She argues that substantial evidence does not support the ALJ's reasons for discrediting Dr. Martin's medical source statement. *Id.* at 15-17. The Commissioner responds that the ALJ applied the correct legal standards in according little weight to Dr. Martin's opinions, and substantial evidence supports the ALJ's reasons for doing so. Doc. 14 at 5-11.

The Court first recommends that the ALJ properly did not assign any weight to Dr. Martin's January 11, 2013 opinion regarding Plaintiff's inability to work. Tr. 21, 293. The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2015). Opinions on some issues, such as whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p; *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011). Accordingly, Dr. Martin's opinion that Plaintiff is unable to work and is disabled is an issue reserved for the Commissioner. Tr. 293; *see* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Similarly, the Court recommends that Dr. Martin's May 29, 2013 opinion on Plaintiff's functional limitations contains issues reserved for the Commissioner. Tr. 284-86. Although the ALJ may consider Dr. Martin's opinion regarding functional limitations, RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *see Calvo v. Colvin*, No. 8:12-CV-1485-T-TGW, 2013 WL 3941027, at *5 (M.D. Fla. July 30, 2013) ("[T]he determination of the

plaintiff's functional limitations in assessing the plaintiff's [RFC] is an issue assigned to, and reserved to, the Commissioner."). The regulations provide that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." 20 C.F.R. § 404.1527(d)(2). As a result, in assessing Plaintiff's RFC, the ALJ need not account for the vocational limitations opined by Dr. Martin. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *Calvo*, 2013 WL 3941027, at *5.

Moreover, Dr. Martin completed his medical source statement by checking off boxes on form questionnaires. Tr. 284-86. Form questionnaires or so-called "checklist" opinions such as that completed by Dr. Martin generally are disfavored. *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

To the extent that Plaintiff argues substantial evidence does not support the ALJ's reasons for discrediting Dr. Martin's May 29, 2013 opinion, the Court recommends that the ALJ did not make any error. Tr. 21. Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's

impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Here, in assessing Plaintiff's RFC, the ALJ accurately discussed in detail Dr. Martin's treatment notes. Tr. 18-20. After the ALJ expressly considered them along with other evidence, he concluded that Plaintiff's inability to perform even sedentary work in an 8-hour day is not supported by the objective medical evidence and other evidence of record, including Plaintiff's limited post-surgical treatment. Tr. 21. The ALJ also found that Plaintiff's accounts of her daily activities do not support Dr.

Martin's opined limitations. *Id.* The ALJ further concluded that his analysis of Plaintiff's medical evidence supports his RFC findings. Tr. 23.

Plaintiff attempts to rebut the ALJ's findings by presenting contradictory evidence. Doc. 13 at 15-17. She further argues that the ALJ improperly substituted his judgment for that of Dr. Martin. *Id.* at 15. The Court recommends that the ALJ did not substitute his judgment for that of Dr. Martin, but properly weighed contrary evidence and discounted the weight given to Dr. Martin's opinion. The Eleventh Circuit has held that "an ALJ who is not a medical expert [may not] subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). The court disapproved when an ALJ made findings, "i.e., [the claimant] exhibited no significant observable physical signs which could be related to constant pain. . . ." *Id.* (internal quotation marks omitted).

On the contrary, instead of making a medical assessment, the ALJ here noted Dr. Martin's findings, such as that Plaintiff had "full grip and lower extremity strength of 5/5" and negative straight leg raise. Tr. 21, 279, 281, 283; *cf. Freeman*, 681 F.2d at 731. The ALJ also found that Plaintiff engaged in significant activities, including homeschooling her two young daughters. Tr. 21. After discussing conflicting evidence within Dr. Martin's treatment notes, the ALJ held that Dr. Martin's medical source statement is inconsistent with his own treatment notes. Tr. 21. The ALJ's assessment of conflicting evidence was within his discretion because "when there is credible evidence on both sides of an issue it is the Secretary, acting

12

through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409). Thus, the Court will not recommend overturning the ALJ's decision simply because, as Plaintiff argues, conflicting medical evidence exists, and the ALJ resolved the conflicts in the evidence of record. Doc. 13 at 15-17; *Lacina*, 606 F. App'x at 525 (citing *Grant*, 445 F.2d at 656) ("It is 'solely the province of the Commissioner' to resolve conflicts in the evidence and assess the credibility of witnesses.").

Furthermore, the ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted). As noted, Dr. Martin's medical source statement's inconsistency with his own medical records constitutes good cause to give little weight to Dr. Martin's opinion. Tr. 21; *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Thus, by properly weighing conflicting evidence and establishing good cause to discount the weight given to Dr. Martin's statement, the Court recommends that the ALJ properly accorded little weight to Dr. Martin's May 29, 2013 statement.

> b. *Whether the ALJ properly discredited Plaintiff's subjective complaints*

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's allegations are not entirely credible. Tr. 18. The ALJ noted that although Plaintiff has a history of back pain with radiculopathy and back surgery, there has been "minimal objective evidence and treatment since the surgery." Tr. 22. The ALJ specifically found that:

13

> The MRI post-surgery shows nothing more than a small disc herniation (Exhibit 3F/13), and she has required nothing more than conservative treatment [and] has not requested nor sought surgery for the new pain. [Plaintiff] testified that the doctors have told her it was scarring partially, but the evidence fails to show objective findings to warrant [Plaintiff's] complaints of ongoing pain.

Tr. 22-23.

In addition to Plaintiff's history of limited treatment and objective findings, the ALJ determined that Plaintiff has engaged in "numerous activities." Tr. 23. The ALJ noted that Plaintiff is the primary caregiver for her two daughters aged four and eight, one of whom has special needs and requires more attention. *Id.* The ALJ also indicated that Plaintiff has homeschooled her daughters for the last two years, performs certain light housework and drives regularly. *Id.* As a result, the ALJ determined that Plaintiff "is capable of light work on sustained basis." *Id.*

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors

concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Here, the Court recommends that the ALJ properly considered and evaluated Plaintiff's testimony regarding the effects of her alleged symptoms on her activities. Tr. 18-23. Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence. Tr. 18-23. After properly discussing the standard and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 18.

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Here, based on his detailed analysis of the entire record, the ALJ discounted the credibility of Plaintiff's subjective complaints for the reasons clearly

15

articulated in his decision, such as Plaintiff's history of limited medical treatments after her back surgery and her extensive daily activities. Tr. 18-23.

Plaintiff argues that substantial evidence does not support the ALJ's reasons for discrediting her subjective complaints again by presenting evidence that contradicts the ALJ's findings. Doc. 13 at 18-19; Tr. 22-23. The Commissioner responds that the ALJ properly discredited Plaintiff's subjective complaints by considering relevant factors. Doc. 14 at 11-13. The Commissioner also asserts that substantial evidence supports the ALJ's findings. *Id.* at 13.

Plaintiff first contends that the ALJ erred in analyzing Plaintiff's MRIs dated January 17, 2012. Doc. 13 at 18; Tr. 265-66. Plaintiff provides that Dr. Joanne Wernicki, who examined Plaintiff's MRI, found:

1. Probable residual or recurrent central and left lateral 5 mm subligamentous HNP L5-S1 causing mild central and bilateral recess stenosis, left greater than right. Suggest clinical correlation and recommend follow up repeat study with gadolinium for better delineation of post-surgical scarring.
2. Degenerative facet disease L4-5 and L5-S1.

Doc. 13 at 18; Tr. 266. Despite these findings, Plaintiff claims that the ALJ substituted his judgment with that of Dr. Wernicki by determining that "[t]he MRI post-surgery shows nothing more than a small disc herniation." Doc. 13 at 18; Tr. 22.

In contrast, the ALJ did not deny Plaintiff's degenerative disease; in fact, he acknowledged in his opinion that "[t]he objective medical evidence confirms [Plaintiff's] history of back pain with radiculopathy and a history of back surgery. There has been additional evidence submitted showing a small disk herniation after

the microdiscectomy."[6] Tr. 22. The ALJ also discussed in detail Plaintiff's MRI. Tr. 19. Furthermore, Dr. Martin, who reviewed Plaintiff's January 17, 2012 MRI, found that "[i]n the cervical spine [Plaintiff] has some mild degenerative changes at 5-6 and 6-7 but no neural compromise. The thoracic spine is unremarkable. She has a central bulge at L5-Sl but the nerve root does not appear to be compressed." Tr. 277. This opinion that Plaintiff's MRI was generally unremarkable supports the ALJ's finding that Plaintiff's MRI showed "nothing more than a small disc herniation." Tr. 22. Given Dr. Martin's and the ALJ's explanations, the Court recommends that even if the ALJ erred in assessing Plaintiff's January 17, 2012 MRI, it was harmless because it would not have affected the ALJ's assessment of Plaintiff's credibility. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Plaintiff next argues that the ALJ did not properly analyze Plaintiff's accounts of her daily activities by presenting her contradictory testimony from the hearing before the ALJ. Doc. 13 at 18-19. As noted, it is the ALJ, not the Court, who resolves conflicts in the evidence and assesses the credibility of witnesses. *See Powers*, 738 F.2d at 1152 (11th Cir. 1984) (citation omitted); *Lacina*, 606 F. App'x at 525 (citing *Grant*, 445 F.2d at 656). Furthermore, the ALJ discredited Plaintiff's testimony not only based on Plaintiff's accounts of her daily activities, but also based on his analysis

---

[6] Discectomy is surgery to remove low-back herniated disc material that is pressing on a nerve root or the spinal cord. WedMD, http://www.webmd.com/back-pain/discectomy-or-microdiscectomy-for-a-herniated-disc (last visited July 27, 2017). Microdiscectomy uses a special microscope to view the disc and nerves. *Id.*

of the entire evidence. Tr. 18-23. Accordingly, even if the ALJ erred in his analysis of Plaintiff's daily activities, it is not clear, and Plaintiff does not argue at all, how it would have affected the ALJ's decision regarding her credibility. *See Hunter*, 609 F. App'x at 558 (citing *Diorio,* 721 F.2d at 728). As a result, the Court recommends that the ALJ properly discounted Plaintiff's subjective complaints and testimony for the reasons clearly articulated in his opinion. Tr. 18-23; *see Wilson*, 284 F.3d at 1225 (internal citations omitted); *Werner*, 421 F. App'x at 939.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 3rd day of August, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record